IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LORI MAIER and JAMES MAIER,           )
personally and on behalf of B.T.      )
a minor child,                        )
                                      )
          Plaintiffs,                 )
                                      )
     v.                               )     Civil Action No. 08-0154
                                      )
CANON MCMILLAN SCHOOL DISTRICT,       )
and LINDA NICHOLS, in her             )
individual and official capacity      )
as former Principal, and             )
MICHELE MOELLER, in her individual    )
and official capacity as softball     )
coach of Canon McMillan High          )
School Varsity Team, and EUGENE       )
BOOKLITNER, in his individual         )
and official capacity as former       )
Superintendent, and DR. NICK BAYAT,   )
in his individual and official        )
capacity as Superintendent, and       )
JUSTIN BEDILION, in his individual    )
and official capacity as employee     )
and volunteer softball coach,         )
                                      )
          Defendants.                 )

## MEMORANDUM and ORDER

Gary L. Lancaster
District Judge.                                    August 20, 2009

          This is an action in civil rights under section 1983 of

the Civil Rights Act of 1871, 42 U.S.C. § 1983; Title IX of the

Civil Rights Act of 1964, 20 U.S.C. § 1681(a); and Article I, §§ 1,

8 of the Pennsylvania Constitution [doc. no. 1].  Plaintiffs bring

this action personally and on behalf of their minor child, B.T.,

against the Canon McMillan School District (the "School District"),

Linda Nichols, Michelle Moeller, Eugene Buchleitner, and Dr. Nick

Bayat (collectively, "the School District defendants").[1]

Plaintiffs allege that B.T., while a student at Canon McMillan High School, had a sexual relationship with defendant Justin Bedilion, an employee of and volunteer softball coach for the School District. Plaintiffs allege that the School District defendants violated B.T.'s civil rights by, <u>inter alia</u>, failing to adequately investigate, supervise, and train defendant Bedilion and by failing to effectuate and follow proper policies and procedures to protect students from sexual abuse. Plaintiffs further allege that the School District created and/or permitted an environment of sexual harassment, which deprived B.T. of educational opportunities in violation of Title IX. Finally, plaintiffs allege various state law claims.

Before the court is the School District defendants' motion for summary judgment pursuant to Fed.R.Civ.P. 56(c). [Doc. No. 61]. For the reasons set forth below, the motion will be granted, in part. Judgment will be entered in favor of the School District defendants on all federal claims. The remaining state law claims will be dismissed as asserted against the School District defendants, without prejudice.

---

[1]

Defendant Justin Bedilion is not a member of the School District defendants. He has not entered and appearance in this action nor has he joined in the School District defendants' motion for summary judgment.

I.      BACKGROUND

        Unless otherwise indicated, the facts set forth below are undisputed.

    A.      B.T.'s Relationship With Defendant Bedilion

        At all relevant times, B.T. was a minor and a student at Canon McMillan High School.  In the fall of 2005, B.T. played softball for the Lady Knights recreational fall ball team.  In the spring of 2006, B.T. played softball for the Canon McMillan High School junior varsity team.  According to B.T., she first met Bedilion during the 2005 fall ball season.  Bedilion was then 24 years old and a volunteer assistant softball coach for both the Lady Knights and the Canon McMillan High School softball team.  He also worked in the School District's Information Technology (IT) department.

        In the fall of 2005 and continuing into 2006, Bedilion socialized with plaintiffs Lori and James Maier, B.T.'s parents, and was a guest in their home on several occasions.  Bedilion also made numerous telephone calls to B.T. on his School District-issued cell phone.  The monthly cell phone bill for the School District was processed through the School District's business office.

        During this same time period, Bedilion made a series of sexual advances to B.T.  At some point in the fall of 2005, these sexual advances culminated in sexual activity between B.T. and Bedilion.  The activity occurred during and after school, on school

3

property, and in Lori and James Maier's house.

      B.    <u>Defendant Bedilion's Coaching History</u>

      When Bedilion first began coaching for Canon McMillan in 2005, Linda Nichols, the principal of Canon McMillan High School, had a conversation with him regarding appropriate behavior with players.  Ms. Nichols told Bedilion that when "first an employee [] it's tough for a young person sometimes to know where to draw that line."  [Doc. No. 64 at Exh. D].

      Ms. Nichols then had another conversation with Bedilion in approximately fall or winter of 2005.  At that time, she told Bedilion and defendant Michelle Moeller, head coach of the Canon McMillan High School girls softball program, to stop their prior practice of giving softball players rides to practice because of liability issues and because it gave rise to an appearance of impropriety.  According to Guy Montecalvo, the School District's Athletic Director, once he became aware of the practice, he directed that coaches should not transport athletes in their private vehicles.  Before this prohibition, Bedilion and the other coaches regularly gave the softball players rides from the high school to the softball team's indoor practice facility. Afterwards, Ms. Nichols and Ms. Moeller believed that the coaches were no longer giving the girls rides.  Despite this directive, however, Bedilion continued to give B.T. rides home after practice. B.T.'s parents, however, were aware that Bedilion gave B.T. rides

4

and had no objection.

In July 2005, Ms. Moeller received a complaint from the parent of another softball player regarding Bedilion's actions. The parent, Mrs. Cross, complained that Bedilion called her daughter and other softball players on the telephone, "goof[ed] around" at tournaments, and drove too fast to games. During that conversation, however, Mrs. Cross also told Ms. Moeller that there was no indication of sexual inappropriateness. At Ms. Moeller's recommendation, Mrs. Cross called Bedilion about her concerns. Afterwards, Mrs. Cross considered the matter to be resolved.

Ms. Moeller was also aware in the fall of 2005 that Bedilion spent the night at the home of another softball player following a softball fundraiser at a local restaurant. It is not in dispute that Bedilion was an invited guest of the softball player's parents, Mr. and Mrs. Pantely. The parents allowed him to sleep overnight in their house so that he would not have to drive after having consumed alcohol.

C.   February 10-13, 2006

In February 2006, Ms. Maier reviewed her cell phone bills and discovered that Bedilion and B.T. were exchanging frequent calls at inappropriate hours of the day and night. On Friday, February 10, 2006, Ms. Maier called Ms. Moeller and informed her of the high number of calls between B.T. and Bedilion. That same day, Ms. Maier dropped off her cell phone records to Ms. Moeller and

also gave her a passcode to access the records online.  Ms. Moeller stated that she "was concerned because she knew some of the seniors on this current year's team had reported to her that [Bedilion] now was acting differently with [B.T.]" [Doc. No. 64 at Exh. B, p.44]. Moeller provided the cell phone records to Ms. Nichols, principal of Canon McMillan High School, over the weekend.

The following Monday, February 13, 2006, Ms. Nichols and Ms. Moeller met with Mr. and Ms. Maier and with Ms. Maier's sister regarding B.T. and Bedilion.  During this meeting, the Maiers raised concerns about the following issues: the high number of cell phone calls between B.T. and Bedilion, that Bedilion had been in their home several times, and that Bedilion drove B.T. home from practice.  They stated that they believed that B.T. and Bedilion had an inappropriate relationship.  Ms. Nichols's notes from the meeting reflect that Ms. Maier said that B.T. was in a "dangerous situation." [Doc. No. 73 at Exh. 1]. Plaintiffs state that, at this meeting, they also raised concerns about Bedilion having inappropriate contact with other students.

Immediately following the meeting, Ms. Nichols and Ms. Moeller met with Bedilion.  They told Bedilion that he must turn in his keys and Canon McMillan High School softball materials and that he was no longer permitted near the softball field or players.[2]

---

[2] Plaintiffs dispute that Ms. Nichols and Ms. Moeller terminated Bedilion from his coaching position immediately.  Rather, plaintiffs assert that after the meeting, Bedilion called B.T. on

After meeting with the Maiers and Bedilion, Ms. Nichols contacted Dr. Nick Bayat, Superintendent of the School District, and informed him of the meeting with the Maiers.  She also provided him with her handwritten notes taken during her meeting with the Maier family. At that time, Dr. Bayat determined that he would formally terminate Bedilion from the volunteer coaching position and requested a resignation as soon as possible.  Later that day, Bedilion resigned from his IT position in the School District.  Dr. Bayat testified that, if Bedilion had not resigned, he would have been terminated.

Ten months later, on December 12, 2006, Bedilion was arrested and charged with committing sexual offenses against B.T. which took place in August 2006.  He was later convicted of statutory sexual assault and aggravated indecent assault and incarcerated for his conduct.

D.   Plaintiffs' Lawsuit

On February 2, 2008, Mr. and Ms. Maier filed this action on behalf of B.T.  Plaintiffs allege the following causes of action: a section 1983 claim against Bedilion alleging that he violated B.T.'s rights to personal security, bodily integrity, and

---

her cell phone.  Ms. Maier immediately contacted Ms. Nichols about the call and Ms. Nichols then had another meeting with Bedilion at which time he was removed as a volunteer softball coach.  It is not in dispute, however, that at the end of the day on February 13, 2006, Bedilion was no longer a Canon McMillan High School softball coach and he was not permitted near any of the softball players.

freedom from sexual abuse guaranteed by the Fourteenth Amendment[3] to the United States Constitution (Count I); a section 1983 claim against the School District defendants alleging that they subjected B.T. to violations of her right to personal security and bodily integrity by, _inter_ _alia_, failing to adequately investigate, supervise, and train Bedilion and failing to effectuate and follow proper policies and procedures to protect students from sexual abuse (Count II); a Title IX claim against the School District alleging that it created and/or permitted an environment of sexual harassment, which deprived B.T. of educational opportunities (Count III); an intentional infliction of emotional distress claim against all defendants (Count IV); and a claim that all defendants intentionally and deliberately violated B.T.'s due process rights under Article I, § 1 of the Pennsylvania Constitution and her right to be free of illegal seizures under Article I, § 8 of the Pennsylvania Constitution (Count V).


II.   STANDARD OF REVIEW

        Fed.R.Civ.P. 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that

---

        [3] This court dismissed plaintiffs' Fourth Amendment claim on November 26, 2008.  [Doc. No. 52 at n.4].

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Hearsay statements can be considered on summary judgment if they are "capable of admission at trial." Shelton v. Univ. of Med. & Dentistry of N.J., 223 F.3d 220, 223 n.2 (3d Cir. 2000) (citing Stelwagon Mfg. Co. v. Tarmac Roofing Sys., Inc., 63 F.3d 1267, 1275 n.17 (3d Cir. 1995)).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986) (internal quotation marks omitted). Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. Id. In determining whether the dispute is genuine, the court's function is not to weigh the evidence or to determine the truth of the matter, but only to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. Id. at 248-49.

To demonstrate entitlement to summary judgment, defendants, as the moving parties, are not required to refute the essential elements of plaintiffs' cause of action. Defendants need only point out the absence or insufficiency of plaintiffs' evidence offered in support of those essential elements. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). Once that

burden has been met, plaintiffs must identify affirmative evidence of record that supports each essential element of their cause of action.  If plaintiffs fail to provide such evidence, then they are not entitled to a trial, and defendants are entitled to summary judgment as a matter of law.

It is on this standard that the court has reviewed the motion for summary judgment and the response thereto.


III. <u>DISCUSSION</u>

A. <u>Count II – Section 1983 Claim Against The School District Defendants</u>

1. <u>Section 1983 Claim Against The School District Defendants In Their Individual Capacities</u>

We will first address whether plaintiffs have adduced sufficient evidence to establish a claim under section 1983 against the individual School District defendants.  The individual School District defendants, Mr. Buchleitner, Dr. Bayat, Ms. Nichols, and Ms. Moeller, have moved for summary judgment on the ground that none of them were personally involved in Bedilion's sexual abuse of B.T.  According to the individual School District defendants, they did not know about Bedilion's sexual abuse of B.T. and, therefore, they did not participate in or acquiesce to it.

Plaintiffs contend that the individual School District defendants knew or should have known of the sexual abuse and were personally involved in the decision to allow Bedilion to continue

working and coaching for the School District, thus, putting B.T. at risk of sexual abuse at the hands of Bedilion.  We agree with the individual School District defendants and dismiss plaintiffs' section 1983 claim against them.

In order to recover in a section 1983 action, plaintiffs must prove two essential elements: (1) that the defendants deprived B.T. of a right secured by the Constitution or laws of the United States; and (2) that the defendants deprived B.T. of this federal right while acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).  Section 1983 does not create substantive rights.  It only provides a remedy for violations of rights protected by other federal laws or by the United States Constitution.  City of Oklahoma City v. Tuttle, 471 U.S. 808, 816 (1985).

The law of this jurisdiction is clear that, under the Fourteenth Amendment, students have a constitutional right to be free from sexual assault by their teachers.  Stoneking v. Bradford Area Sch. Dist., 882 F.2d 720, 727 (3d Cir. 1989).  However, "[s]upervisory liability [under section 1983] cannot be based solely upon the doctrine of respondeat superior, but there must be some affirmative conduct by the supervisor that played a role in the discrimination."  Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).

In order to recover, plaintiffs must establish that "(1) the defendant learned of facts or a pattern of inappropriate sexual behavior by a subordinate pointing plainly toward the conclusion that the subordinate was sexually abusing the student; and (2) the defendant demonstrated deliberate indifference toward the constitutional rights of the student by failing to take action that was obviously necessary to prevent or stop the abuse; and (3) such failure caused a constitutional injury to the student." Chancellor v. Pottsgrove Sch. Dist., 501 F.Supp.2d 695, 709-10 (E.D. Pa. 2007)(citing Doe v. Taylor Ind. Sch. Dist., 15 F.3d 443, 454 (5th Cir. 1994)). This test is consistent with the Court of Appeals for the Third Circuit's instruction that supervisory liability requires a showing that the supervisor "had knowledge of and acquiesced" to the violations. Chancellor, 501 F.Supp.2d at 710 (quoting A.M. v. Luzerne County Juvenile Detention Ctr., 372 F.3d 572, 586 (3d Cir. 2004)); Bostic v. Smyrna Sch. Dist., No. 01-261, 2003 WL 23181323, at *4 (D. Del. Jan. 15, 2004).

Plaintiffs have failed to produce any evidence showing that the four individual School District defendants had knowledge of facts pointing towards sexual abuse of B.T. by Bedilion or were deliberately indifferent to it.

a.  <u>Mr. Buchleitner</u>

Mr. Buchleitner was the Superintendent of the School District at the time Bedilion was hired.  He retired from the School District, however, in May of 2005, before B.T. met Bedilion. There is no evidence of record that he had any involvement with the School District, the softball team, or any of the parties to this case after his retirement.

b.  <u>Dr. Bayat</u>

Dr. Bayat was the Superintendent of the School District after Mr. Buchleitner retired.  Plaintiffs have failed to produce any evidence showing that Dr. Bayat had knowledge of an inappropriate relationship between Bedilion and B.T., let alone sexual abuse of B.T., prior to February 13, 2006.  Moreover, it is undisputed that the same day Dr. Bayat heard about the suspicious telephone calls, Bedilion was removed as assistant softball coach and directed not to have any contact with the Canon McMillan softball players.  Additionally, the same day, Dr. Bayat caused Bedilion to resign from his IT job with the School District. Accordingly, plaintiffs have failed to produce any evidence against Dr. Bayat.

c.  <u>Ms. Nichols</u>

At all material times, Ms. Nichols was the Principal of Cannon McMillan High School.  Plaintiffs have failed to produce any evidence that Ms. Nichols knew about any inappropriate relationship

13

between Bedilion and B.T. prior to February 10-13, 2006.
Specifically, there is no evidence that anyone brought any concerns
regarding Bedilion to her before she received the telephone records
from Ms. Maier.  At most, Ms. Nichols was aware that Bedilion, as
well as other coaches, gave players rides to practice, conduct
which she ordered stopped.  This knowledge does not establish that
she was aware of any sexual abuse of B.T. by Bedilion.

        d.  <u>Ms. Moeller</u>

        At all material times, Ms. Moeller was the head coach of
the Canon McMillan girls softball team.  There is nothing on the
record to show that Ms. Moeller, while perhaps on notice that
Bedilion was not acting responsibly as a softball coach, was aware
that he was having a sexual relationship with B.T.  At most, Ms.
Moeller knew that in 2005, before B. T. met him, Bedilion spent a
night at the home of another softball player with permission of the
girl's parents after he had been drinking; that he, as well as
herself, gave B.T. and other players rides to softball practice
before being told to stop; that some of the seniors on the team
reported that he "act[ed] differently" with B.T.; and that he made
personal phone calls to other softball players during the 2005 fall
ball season.  This knowledge, however, does not show that Ms.
Moeller had actual knowledge of any sexual abuse of B.T. before
February 10, 2006, if then.  After the suspicious telephone calls
were revealed on February 10, 2006, Ms. Moeller took immediate

14

action against Bedilion.

Accordingly, there is nothing in the record by which a jury acting reasonably could find Ms. Moeller or any the other individual School District defendants liable for Bedilion's sexual abuse of B. T. under section 1983.[4]

2. <u>Section 1983 Claim Against the School District</u>

We will next address whether plaintiffs have produced sufficient evidence to sustain a claim under section 1983 against the School District.[5]

A school district can be liable under section 1983 for the sexual abuse of a student by a teacher. <u>Stoneking</u>, 882 F.2d at 725; <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 690-91 (1978). Liability does not attach, however, simply because the school district employed the wrongdoer. <u>Monell</u>, 436 U.S. at 691. Instead, to hold the School District liable, plaintiffs must

---

[4] We also note that the evidence on the record would not support a jury finding that any of the individual School District defendants "with deliberate indifference to the consequences, established and maintained a policy, practice or custom with directly caused [the] constitutional harm." <u>A.M. v. Luzerne County Juvenile Detention Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004) (quoting <u>Stoneking v. Bradford Area Sch. Dist.</u>, 882 F.2d 720, 727 (3d Cir. 1989)). <u>See infra</u> section III.A.2.

[5] Plaintiffs have sued Ms. Nichols, Ms. Moeller, Mr. Buchleitner, Dr. Bayat, and Mr. Bedilion both in their official capacities and in their individual capacities. A claim against a government official in his or her official capacity is a claim against the governmental entity the official represents. <u>Kentucky v. Graham</u>, 473 U.S. 159, 165-66 (1985); <u>A.M.</u>, 372 F.3d at 580. As such, the only proper official capacity defendant in this case is the School District.

establish that: (1) the School District's policy, practice, or custom played an affirmative role in bringing about the sexual abuse; and (2) the School District acted with deliberate indifference to that abuse. Gottlieb v. Laurel Highlands Sch. Dist., 272 F.3d 168, 176 (3d Cir. 2001)(citing Stoneking, 882 F.2d at 725); D.C.G. v. Wilson Area Sch. Dist., No. 07-1357, 2009 WL 838548, at *5 (E.D. Pa. Mar. 27, 2009).

As to the first element, a governmental policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to that action issues an official proclamation ... or edict." Andrews, 895 F.2d at 1480 (internal quotation marks omitted) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986)). A governmental custom may be established through a course of conduct that is "so permanent and well settled" that it virtually constitutes law. Id. (internal quotation marks omitted) (quoting Monell, 436 U.S. at 690).

A custom or practice "that communicated condonation or authorization of assaultive behavior" is enough to satisfy the requirements of section 1983 liability. Stoneking, 882 F.2d at 730. The Court of Appeals for the Third Circuit, however, warns that "the mere failure of supervisory officials to act or investigate cannot be the basis of liability." Id. (citing Chinchello v. Fenton, 805 F.2d 126, 133-34 (3d Cir. 1986)). "[A] plaintiff must do more than show that the defendant could have

16

averted her injury and failed to do so." <u>Black</u>, 985 F.2d at 712. Indeed, the negligent failure to discover sexual abuse is not enough to establish section 1983 liability. <u>Id</u>. at 712-13.

Instead, the plaintiff must submit evidence of the sort relied on by the court in <u>Stoneking</u>. In <u>Stoneking</u>, the Court of Appeals for the Third Circuit affirmed the district court's denial of defendants' motion for summary judgment because of evidence of a cover-up. The <u>Stoneking</u> evidence showed that: (1) the principal and assistant principal received at least five complaints of sexual assaults; (2) the records of such complaints were actively concealed; (3) the wrongdoers were given excellent performance evaluations despite the complaints; and (4) the school officials discouraged and/or intimidated students from pursuing their complaints. <u>Stoneking</u>, 882 F.2d at 728-29.

Accordingly, the court found that there was enough evidence for a jury to reasonably conclude that the actions taken by defendants amounted to a custom, practice, or policy which, at a minimum, facilitated sexual abuse of students by teachers in violation of the plaintiff's constitutional rights. <u>Id</u>. at 725, 30-31. Here, unlike in <u>Stoneking</u>, we can find no evidence that any School District policy, practice, or custom played an affirmative role in bringing about the sexual abuse of B.T.

While plaintiffs point to incidents and rumors that they assert gave warning of Bedilion's inappropriate conduct after he

17

was hired, no reasonable jury could conclude any policy or practice of the School District played an affirmative role in bringing about the abuse of B.T.  See Shepard v. Kemp, 912 F.Supp. 120, 127 (M.D. Pa. 1995).  There is no evidence showing that the School District had an unwritten custom of condoning, authorizing, or covering up sexual abuse or that it knew about the abuse in this case.

Unlike the school officials in Stoneking, Ms. Moeller and Ms. Nichols responded immediately when they were first made aware of concerns regarding Bedilion's inappropriate phone calls with B.T.  After hearing Ms. Maier's February 10, 2006 concerns, Ms. Moeller and Ms. Nichols held meetings with the Maier family and with Bedilion the following Monday morning, February 13, 2006. That same day, Ms. Moeller and Ms. Nichols removed Bedilion as a volunteer softball coach for the Canon McMillan High School softball team and prohibited him from frequenting areas near the softball field or the softball players.

Afterwards, Ms. Nichols fully informed Dr. Bayat of the situation and submitted documentation on plaintiffs' concerns.  Dr. Bayat sought and accepted Bedilion's resignation the same day. Thus, the undisputed record evidence shows that, far from condoning Bedilion's conduct, the School District responded appropriately to it.  There was no hesitation by the School District before acting on plaintiffs' concerns about Bedilion's inappropriate phone calls; in fact, the record shows that the School District acted

immediately.

Plaintiffs, nevertheless, contend that a policy of condoning sexual abuse is established because the School District did not previously act on the following pieces of information: (1) that in July 2005, before B.T. joined the Lady Knights team, Mrs. Cross, a softball parent, complained to Ms. Moeller that Bedilion called her daughter and other softball players on the telephone, "goof[ed] around" at tournaments, and drove too fast to games [doc. no. 73 at 11]; (2) that Ms. Moeller knew that Bedilion spent the night at the home of another softball player in 2005 as an invited guest of the player's parents [doc. no. 73 at 11]; (3) that the School District knew that Bedilion, as well as other coaches, gave B.T. rides to and from practice [doc. no. 73 at 26-27]; (4) that had the School District reviewed Bedilion's cell phone records, they would have discovered that Bedilion made numerous calls to B.T. [doc. no. 73 at 27]; (5) that Ms. Maier testified that Bedilion indicated to her that Ms. Nichols and Ms. Moeller had an earlier conversation with him regarding a prohibition on his dating softball players [doc. no. 73 at 26]; and (6) that Ms. Moeller was aware of reports from senior girls that Bedilion was "acting differently" with B.T. [doc. no. 73 at 12-13].[6]

---

[6] Plaintiffs also assert that, at a graduation party in 2005, prior to when B.T. met Bedilion, Assistant Coach Moskal saw Bedilion in a tent with two softball players. The source of this information is the testimony of Ms. Maier. Ms. Maier, however, testified that she learned of this alleged event "third-hand" from her husband,

It is clear from the undisputed record, however, that
none of these occurrences provide sufficient evidence that the
School District had a policy of condoning sexual abuse of students
by coaches and that policy caused the sexual abuse of B.T.  First,
Mrs. Cross complained about Bedilion's telephone calls, but did not
complain about sexual inappropriateness by Bedilion.  Second, on
the occasion that Ms. Moeller was aware that Bedilion spent the
night at the home of the softball player, he was an invited guest
of the player's parents.  The parents did not report any type of
sexual misconduct or other inappropriate behavior while he was in
their home; indeed, the host parents made no complaint to the
School District regarding this incident.   Third, the School
District was not on notice of Bedilion's calls to B.T. simply
because he used his School District-issued cell phone.  It would be
unreasonably burdensome to require that school districts review and
investigate all personal calls made by their employees.  Further,
there is no evidence that anyone at the School District did so.
Fourth, that Bedilion, as well as the other softball coaches, gave
players rides does not establish a policy of condoning sexual abuse
of students by coaches.  In any event, when told that coaches were
giving athletes rides to practice, Ms. Nichols ordered them to

---

who heard the story from another softball parent.  [Doc. No. 64 at
Exhibit B, p.26-28].  We will not consider this hearsay statement
on summary judgment because the record shows no indication that it
could be admitted at trial.  <u>Shelton v. Univ. of Med. & Dentistry
of N.J.</u>, 223 F.3d 220, 223 n.2 (3d Cir. 2000).

stop.  Fifth, there is no admissible evidence that a conversation took place between Ms. Nichols, Ms. Moeller, and Bedilion regarding a prohibition on his dating softball players.  Instead, the record reflects that the conversation between these three individuals dealt strictly with the practice of giving players rides to practice.

And finally, that Ms. Moeller did not act on the gossip from senior girls that Bedilion "act[ed] differently" with B.T. is not enough to show a policy of condoning sexual abuse of students by coaches.  Indeed, the Court of Appeals for the Third Circuit has explained that it is reluctant "to impose on the district an obligation to treat as true, all rumors, until proven otherwise." Johnson v. Elk Lake Sch. Dist., 283 F.3d 138, 144 n.1 (3d Cir. 2002)(internal quotations and citation omitted).  The Court commented:

> In the absence of any direct complaints made to school officials, the mere floating around of unsubstantiated rumors regarding a particular employee - particularly in the high school setting, which is notoriously rife with adolescent gossip - does not constitute the type of notice for which a school district can be held liable.

Id.  As such, "[o]nly an exercise in impermissible judicial hindsight could justify holding [the School District] liable for the actions of [Bedilion]."  D.C.G., 2009 WL 838548, at *10 (internal quotation marks omitted) (quoting Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991)).  At most, the rumors

21

might have justifiably warranted an investigation by Ms. Moeller into the rumors.  Again, however, as the Court of Appeals for the Third Circuit has stated, "the mere failure of supervisory officials to act or investigate cannot be the basis of liability." Stoneking, 882 F.2d at 730 (citing Chinchello, 805 F.2d at 133-34).

Accordingly, based on the undisputed record presented, a jury acting reasonably could not conclude that the School District had a policy of facilitating or condoning the sexual abuse of students by coaches.

Moreover, the School District was not deliberately indifferent to the possibility of sexual abuse of B.T., as shown by its prompt response when made aware of the phone records, as well as, by its hiring and employment requirements.  In connection with his hire, Bedilion, as with all new hires with the School District, had to complete a Pennsylvania State Police Request for Criminal Record Check and receive a Pennsylvania Child Abuse History Clearance.  The Pennsylvania State Police returned the Criminal Record Check indicating "No Record" and Bedilion received a Pennsylvania Child Abuse History Clearance.

Additionally, the School District adopted a written Sexual Harassment Policy which stated that:

> The Canon-McMillan School District will not
> tolerate harassment of any kind.  It is the
> policy of the Canon-McMillan School District
> to maintain a learning and working environment
> that is free from harassment (including sexual
> harassment) and sexual violence. ... The

> District prohibits any form of harassment
> (including sexual harassment) and sexual
> violence.  Sexual harassment is deemed
> unacceptable conduct in the educational and
> employment environment and will not be
> tolerated. ... It shall be a violation of this
> policy for any student, employee, or agent of
> the District to harass a student or an
> employee through conduct or communication of a
> sexual or otherwise harassing nature as
> defined herein.  It shall be a violation of
> this policy for any student, employee, or
> agent of this school district to be sexually
> violent toward a student or employee. ...
> Complaints which allege harassment will be
> promptly and thoroughly investigated in a
> confidential manner by the person designated
> by the Superintendent.

[Doc. No. 64 at Exh. Q].  The Canon McMillan High School Student
Handbook also specified that "no harassment of any kind, including
sexual harassment, will be tolerated.  This policy applies to
students, employees, and visitors." [Doc. No. 64 at Exh. R].  The
School District defendants were aware of the policy against sexual
harassment and knew that they must report and/or investigate any
sexual abuse.

Given the undisputed evidence of the School District's
actions in conducting a background check on Bedilion before hiring
him, maintaining a written policy against sexual harassment, and
acting promptly when confronted with the suspicious phone records,
a jury acting reasonably could not find that the School District
was deliberately indifferent to sexual abuse of students by
coaches.

23

For these reasons, plaintiffs' section 1983 claim against the School District in Count II is dismissed.[7]

B.   <u>Count III - Title IX Claim Against the School District</u>

We will next review plaintiffs' claim against the School District under Title IX.  The School District contends that the Title IX claim should be dismissed because plaintiffs failed to provide any evidence that the School District had actual knowledge of Bedilion's abuse prior to February 10, 2006.  Plaintiffs respond that Ms. Moeller had actual knowledge because she knew about complaints regarding Bedilion.  We agree with the School District.

Title IX provides that "[n]o person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any educational program or activity receiving Federal financial assistance."   20 U.S.C. § 1681(a).   Title IX covers sexual harassment or abuse of a student by a teacher or school official. <u>Bostic v. Smyra Sch. Dist.</u>, 418 F.3d 355, 359 (3d Cir. 2005).

---

[7]
Plaintiffs also assert that the School District breached its affirmative duty to protect B.T.  We disagree.  The Court of Appeals for the Third Circuit has held that no special relationship exists between public school students and public school officials. <u>Black v. Indiana Area Sch. Dist.</u>, 985 F.2d 707, 713 (3d Cir. 1993).

24

Title IX only applies to school districts that receive federal financial assistance.[8]   To recover under Title IX, a plaintiff must show that "an official of the school district who at a minimum has authority to institute corrective measures on the district's behalf has actual knowledge of, and is deliberately indifferent to, the teacher's misconduct." <u>Gebser v. Lago Vista Ind. Sch. Dist.</u>, 524 U.S. 274, 277 (1998); <u>Chancellor</u>, 501 F.Supp.2d at 708.

The Court of Appeals for the Third Circuit has clarified that actual notice cannot be based upon a mere possibility. <u>Bostic</u>, 418 F.3d at 361.   Instead, "the plaintiffs in a Title IX damages suit based on a teacher's behavior must prove actual knowledge of misconduct, not just actual knowledge of the risk of misconduct, and must also prove that the officials having that knowledge decided not to act on it." <u>Chancellor</u>, 501 F.Supp.2d at 708 (quoting <u>Delgado v. Stegall</u>, 367 F.3d 668, 671-72 (7th Cir. 2004)).

As we discussed, <u>supra</u>, the School District did not have any notice of inappropriate behavior until February 10, 2006.   Even this notice, however, may not have risen to the level necessary for Title IX liability because evidence of telephone calls does not automatically establish sexual misconduct. See <u>Bostic</u>, 418 F.3d at

---

[8]
Here, it is not disputed that the School District receives federal financial assistance.   Accordingly, the School District is within the ambit of Title IX.

361 ("a 'possibility' [of a sexual relationship] cannot be equated with a 'known act'").  Regardless, the School District acted immediately to investigate and take corrective measures.  No reasonable jury could find the School District's quick and thorough response to be deliberately indifferent.  Indeed, it would be difficult to instruct the School District on how it could have reacted more reasonably to plaintiffs' February 10, 2006 concerns.

Hence, plaintiffs' Title IX claim fails.

C.   Counts IV and V - State Law Claims

In addition to their claims under section 1983 and Title IX, plaintiffs alleged state law claims of intentional infliction of emotional distress and claims pursuant to Article I, Sections 1 and 8 of the Constitution of the Commonwealth of Pennsylvania.  The court must, therefore, consider whether it should exercise supplemental jurisdiction over the state law claims against the School District defendants.  28 U.S.C. § 1367.

Whether the court will exercise supplemental jurisdiction is within its discretion.  See Growth Horizons, Inc. v. Delaware County, Pa., 983 F.2d 1277, 1284 (3d Cir. 1993).  The primary justification for exercising supplemental jurisdiction, however, is absent if the substantive federal claim is no longer viable.

There is no bright line rule for determining whether a supplemental state law claim should be dismissed when the federal claims have been eliminated before trial.  The Supreme Court has

made clear, however, that under circumstances such as those in the instant case, the balance of factors, _i.e._, judicial economy, convenience, fairness, and comity "will point toward declining to exercise jurisdiction over the remaining state-law claims." Carnegie Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

The court finds that the balance of factors points toward declining to exercise jurisdiction and that no extraordinary circumstances exist to justify maintaining jurisdiction over plaintiffs' supplemental state law claims against the School District defendants. Plaintiffs' state law claims against the School District defendants will, therefore, be dismissed without prejudice.

IV.   CONCLUSION

For the foregoing reasons, the School District defendants' motion for summary judgment [doc. no. 61] will be granted as to plaintiffs' section 1983 and Title IX claims against the School District defendants (Counts II and III). As the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims against the School District defendants (Counts IV and V), those claims will be dismissed as to the School District defendants without prejudice to plaintiffs' right to refile them in state court.

An appropriate order follows.

27

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


LORI MAIER and JAMES MAIER,           )
personally and on behalf of B.T.      )
a minor child,                        )
                                      )
          Plaintiffs,                 )
                                      )
     v.                               )     Civil Action No. 08-0154
                                      )
CANON MCMILLAN SCHOOL DISTRICT,       )
and LINDA NICHOLS, in her             )
individual and official capacity      )
as former Principal, and             )
MICHELE MOELLER, in her individual )
and official capacity as softball     )
coach of Canon McMillan High         )
School Varsity Team, and EUGENE       )
BOOKLITNER, in his individual         )
and official capacity as former       )
Superintendent, and DR. NICK BAYAT,)
in his individual and official        )
capacity as Superintendent, and      )
JUSTIN BEDILION, in his individual )
and official capacity as employee     )
and volunteer softball coach,         )
                                      )
          Defendants.                 )



ORDER

          AND NOW, this 20ᵗʰ day of August, 2009, IT IS HEREBY

ORDERED that defendants Canon McMillan School District, Linda

Nichols, Michelle Moeller, Eugene Buchleitner, and Dr. Nick Bayat's

motion for summary judgment [doc. no. 61] is GRANTED in part.

Judgment shall be entered in favor of these defendants on Counts II

and III.   Counts IV and V are hereby dismissed as to these

defendants without prejudice to plaintiffs' right to refile them in

state court.

                                        BY THE COURT:

                                        s/Gary L. Lancaster_____, J.
                                        Gary L. Lancaster
                                        United States District Judge

cc:  All counsel of record

2